UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| FREDY NAHUN RAUDALES CASTRO,<br><br>Petitioner,<br><br>v.<br><br>FACILITY ADMINISTRATOR WARDEN NORTHWEST ICE PROCESSING CENTER, et al.,<br><br>Respondents. | Case No. 2:26-cv-04057-TMC<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING MOTIONS FOR TEMPORARY RESTRAINING ORDERS |

## I. INTRODUCTION AND BACKGROUND

Petitioner Fredy Nahun Raudales Castro is a Honduran citizen who is detained at the Northwest Immigration and Customs Enforcement Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 1-3 at 20; Dkt. 10 ¶¶ 3, 20. In July 2019, United States Border Patrol agents encountered Raudales Castro in Arizona and served him with a Notice and Order of Expedited Removal. Dkt. 10 ¶¶ 8–9; Dkt. 11-2 at 2; Dkt. 11-3 at 4. On August 1, 2019, he was removed to Honduras. Dkt. 10 ¶ 10; Dkt. 11-3 at 4.

In March 2022, Raudales Castro reentered the United States without inspection and settled in the Spokane, Washington area. Dkt. 1-1 at 2; Dkt. 11-3 at 4. Since at least 2024, he has

worked in the residential construction industry. Dkt. 1-1 at 2; Dkt. 1-2 at 14–15. He has no criminal history in the United States. Dkt. 11-3 at 4. In February 2025, he began living with his partner in Spokane Valley. Dkt. 1-2 at 5. He is a primary caretaker for his partner's young daughter. *Id.* at 6. As of late October 2026, his partner was pregnant with his son and due to give birth on November 10, 2026. *Id.* at 2, 5–6.

On August 12, 2026, Immigration and Customs Enforcement ("ICE") officers apprehended Raudales Castro while he was working at a construction site. *Id.* at 6; Dkt. 11-3 at 3. The next day, he was transported to NWIPC, and the Department of Homeland Security ("DHS") reinstated his 2019 removal order. Dkt. 10 ¶¶ 12–13; Dkt. 11-4. DHS determined that Raudales Castro was eligible for removal to Honduras because he lacked a reasonable fear of persecution or torture in that country. Dkt. 10 ¶ 14; Dkt. 13 at 2. On September 17, an Immigration Judge ("IJ") held a hearing and concurred with DHS's reasonable fear determination. Dkt. 13 at 2–3. The IJ returned the case to DHS to execute Raudales Castro's removal from the United States. *Id.* at 3. Raudales Castro then attempted to appeal the IJ's order to the Board of Immigration Appeals ("BIA"). Dkt. 1-1 at 11–12; Dkt. 1-3 at 22–27; Dkt. 14 at 9. DHS records do not show that an appeal has been docketed, and it is unclear whether the BIA has accepted any appeal that may have been filed. *See* Dkt. 10 ¶ 18; Dkt. 14 at 18.

On October 22, Raudales Castro filed a petition for writ of habeas corpus in this Court, arguing that Respondents had unlawfully detained him without the opportunity for bond. Dkt. 1. Along with the petition, he moved for a temporary restraining order ("TRO") seeking (1) expedited consideration of his habeas claim in light of his partner's pregnancy and (2) an injunction against his transfer outside of the Western District of Washington while the habeas case proceeds. Dkt. 2. The Court denied the TRO motion but explained that "[s]hould

Respondents indicate an intent to imminently transfer Petitioner, Petitioner may move for emergency relief as needed." Dkt. 6.

On November 5, Federal Respondents filed a return, asserting that Raudales Castro was lawfully detained subject to his reinstated removal order. Dkt. 9. The return was accompanied by a notice that ICE intended to transfer Raudales Castro out of this district and remove him from the United States within seven days. Dkt. 8. The next day, Raudales Castro moved for a TRO enjoining his transfer or removal during the pendency of both this habeas case and his purported appeal before the BIA. Dkt. 14. The Court entered a provisional TRO enjoining transfer or removal of Raudales Castro pending further briefing from Federal Respondents. Dkt. 15. On November 10, Raudales Castro filed another TRO motion seeking the same relief. Dkt. 16. The Court directed Federal Respondents to respond to both TRO motions no later than November 16. Dkt. 17. Federal Respondents have done so. Dkt. 18. On November 19, Raudales Castro filed a traverse stating that he had petitioned the Ninth Circuit for review of the IJ's decision and for a stay of removal, and asking the Court to extend the provisional TRO to give the appellate court time to act. Dkt. 20.

The habeas petition and both pending TRO motions are now ripe for the Court's review. While the Court questions the enforcement priorities that led to the detention and pending removal of a productive community member with no criminal history and a newborn (or soon to be born) U. S.-citizen child, the Court lacks jurisdiction to interfere with DHS's execution of a valid removal order. Because the Court is unable to provide the relief that Raudales Castro seeks, the Court DENIES the habeas petition (Dkt. 1) and the TRO motions (Dkts. 14, 16).[1]

[1] Federal Respondents have moved to seal the unredacted copy of the IJ's order concurring with DHS's negative fear determination. Dkt. 12. Because the order contains information that may endanger Raudales Castro or his family members, the Court concludes that there are compelling reasons for the filing to remain sealed. *See Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d

## II. LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). A habeas petitioner must prove by the preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c)(3).

A TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that the standard for a TRO is "substantially identical" to the standard for a preliminary injunction). A plaintiff seeking a TRO must show: (1) they are likely to succeed on the merits, (2) the potential for irreparable harm absent preliminary relief, (3) the balance of equities favors injunction, and (4) the relief sought is in the public interest. *Winter*, 555 U.S. at 20; *Stuhlbarg*, 240 F.3d at 839 n.7. "Likelihood of success on the merits is a threshold inquiry and is the most important factor." *Simon v. City & County of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025) (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)).

## III. DISCUSSION

Raudales Castro is subject to a reinstated removal order, which became administratively final upon reinstatement. *Johnson v. Guzman Chavez*, 594 U.S. 523, 539 (2021). At that point, the only process available to him in immigration court was consideration for withholding of removal. *Id.* at 530–31. When Raudales Castro expressed a fear of return to Honduras, both an asylum officer and an IJ considered his claim and determined that withholding was not available

1092, 1096–97 (9th Cir. 2016); *see also* Local Rules W.D. Wash. LCR 5(g). The motion to seal (Dkt. 12) is GRANTED, and the filing at Dkt. 13 is to remain sealed.

because he lacked reasonable fear. Dkt. 13. The IJ's order "[was] not a final order of removal and [did] not affect the validity of a previously issued order of removal or render that order non-final." *Riley v. Bondi*, 606 U.S. 259, 269 (2025). And with the asylum officer and the IJ in agreement, Raudales Castro was unable to appeal that decision to the BIA. 8 C.F.R. § 1208.31(g)(1) ("If the immigration judge concurs with the asylum officer's determination that the alien does not have a reasonable fear of persecution or torture, the case shall be returned to DHS for removal of the alien. No appeal shall lie from the immigration judge's decision."). The only appellate review available was a petition for review to the Ninth Circuit, *see Ayala v. Sessions*, 855 F.3d 1012, 1016 (9th Cir. 2017), and while Raudales Castro states that he has filed one, that court has not stayed his removal.[2]

Under binding Ninth Circuit precedent, this Court lacks jurisdiction to interfere with the government's execution of a final, valid removal order. *Rauda v. Jennings*, 55 F.4th 773, 776–77 (9th Cir. 2022). This includes DHS's decision as to when to remove a noncitizen subject to such an order. *Id.* Castro argues that his removal order is not final because he has appealed the IJ's September 17 decision to the BIA. Dkt. 1-1 at 2–3. But the order that Raudales Castro attempted to appeal was not his removal order. Rather, it was a separate determination by the IJ that he lacked reasonable fear of return to the country designated on his reinstated removal order: Honduras. Under DHS regulations, that order cannot be appealed to the BIA, and the Ninth Circuit has not stayed his removal. Raudales Castro's removal order is thus administratively final, and this Court lacks the power to enjoin or delay that removal, even by extending its TRO.

Moreover, Raudales Castro's habeas petition fails on its merits. Pointing to his August 12 encounter with ICE, he argues that he was arrested without a warrant in violation of the Fourth

---

[2] In addition, the Ninth Circuit may lack jurisdiction to consider this request. *See Navarrete v. Blanche*, --- F.4th ----, No. 24-2776, 2026 WL 3378782, at *6 (9th Cir. Nov. 6, 2026).

Amendment and the Immigration and Nationality Act. Dkt. 1-1 at 12; Dkt. 20 at 1–6; *see* 8 U.S.C. § 1357(a)(2). But even if his arrest violated the law, this does not entitle him to habeas relief, as the "'body' or identity" of a detainee "is never itself suppressible as a fruit of an unlawful arrest." *Suraj v. Bondi*, No. 2:25-CV-02699-TMC, 2026 WL 507682, at *3 (W.D. Wash. Feb. 24, 2026) (quoting *I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984)); *Garcia Pantoja v. Hernandez*, No. 2:26-CV-02247-GJL, 2026 WL 2686889, at *3–4 (W.D. Wash. Sept. 14, 2026). Raudales Castro further claims that his removal from the United States is not reasonably foreseeable, and due process requires his immediate release from custody or a bond hearing. Dkt. 1-1 at 11–12; Dkt. 20 at 7–15. But because he has been detained for just three months since the reinstatement of his removal order, and ICE has secured a travel document and intends to imminently remove him, due process does not bar his continued detention pending removal. *See Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). This is fatal to both the habeas petition and the TRO motions.

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS:

1. The Petition for writ of habeas corpus (Dkt. 1) is DENIED.
2. The pending motions for a temporary restraining order (Dkts. 14, 16) are DENIED.
3. The motion to seal (Dkt. 12) is GRANTED.
4. The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 20th day of November, 2026.

Tiffany M. Cartwright
United States District Judge